IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-00172-LTB-KLM

TROY R. ARRINGTON, II,

    Plaintiff,

v.

BORN-N-RAISED, INC., and TIMOTHY R. CHAVEZ,

    Defendants.

_____

ORDER
_____

This case is before me on Defendant's Motion to Strike or Limit the Testimony of Plaintiff's Experts, Jeff Watson and Michael Miranda, and to Preclude Undisclosed Rebuttal Opinions Pursuant to *Daubert* and Fed. R. Evid. 702 [ Doc # 105]. After consideration of the motion, all related pleadings, and the case file, I grant Defendant's motion for the reasons set forth below.

### I. Legal Standard

Rule 702 provides that, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The first step in analyzing whether expert testimony is admissible under Rule 702 requires the court to determine whether the expert is qualified to render an opinion by "knowledge, skill, experience, training, or education." *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). If the expert is sufficiently qualified, then the court must determine whether the expert's opinions are reliable under the principles set forth in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). *Id.* In determining reliability, the court may consider the following nondispositive factors:

> (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community.

*Daubert,* 509 U.S. at 593-94. *See also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 151-52 (1999) (factors set forth in *Daubert* may also be considered where expert relies on skill or experience as opposed to the application of scientific principles). Reliability questions may concern the expert's data, method, or his application of the method to the data. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999). The party offering the expert "must show that the method employed by the expert . . . is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) ("Generally, the district court should focus on an expert's methodology rather than the conclusions it generates.").

Under Rule 702, a district court acts as a "gatekeeper" to ensure that proffered expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591 (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18). *See also*

*U.S. v. Rodriguez-Felix,* 450 F.3d 1117, 1122 (10th Cir. 2006) ("Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."); *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1234 (10th Cir. 2004) ("Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has a relevant 'fit.'").

To satisfy the gatekeeper function mandated in *Daubert*, a trial court must create a sufficiently developed record, make a concrete reliability determination, and make specific findings with adequate discussion on the record regarding its determination. *See Dodge*, 328 F.3d at 1223. The manner in which the trial court performs its gatekeeper function is reviewed for an abuse of discretion. *See Kumho Tire,* 526 U.S. at 152 (explaining that the trial court's broad discretion applies both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability); *Dodge*, 328 F.3d at 1223 ("Though the district court has discretion in how it conducts the gatekeeper function, we have recognized that it has no discretion to avoid performing the gatekeeper function"). Provided the district court performs this role, review is deferential and will not be disturbed unless it is "arbitrary, capricious, whimsical or manifestly unreasonable," or the court is "convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Dodge*, 328 F.3d at 1208-09 (internal quotation marks omitted).

The admissibility of expert testimony is also governed by the principles of Fed. R. Evid. 104(a). Fed. R. Evid. 702, Advisory Committee Notes, 1993 Amendment. Under Rule 104(a),

the proponent has the burden of establishing that admissibility requirements are met by a preponderance of the evidence. *Id.*

Once the Rule 702 and Rule 104(a) requirements are met, it is a question for the jury as to the weight to be given the evidence. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996), overruled on other grounds by *Kumho Tire*, 526 U.S. 137 (1999) ("[A]s long as a logical basis exists for an expert's opinion the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony.") (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988)).

## II. Analysis

### A. Jeff Watson

Mr. Watson has opined that Defendant failed to stop at a stop sign; was on his cell phone at the time of the accident at issue; and was traveling at 40 mph at the moment of impact. *See* Exhibit B to Motion. Mr. Watson's asserts that all of his opinions have been made "with a reasonable degree of certainty within the scientific field of accident reconstruction." *Id.*

Mr. Watson's primary qualification to render opinions in this case is his experience as a Durango police officer from 1989 through 1997. *Id.* While working as a Durango police officer, Mr. Watson responded to calls involving traffic accidents; investigated traffic accidents; provided oversight, supervision, and instruction on traffic accident investigations; testified in court regarding traffic accidents; and received training on reporting and investigating traffic accidents. *Id.* Mr. Watson also served as an instructor in traffic accident investigation for the

Rocky Mountain Institute of Traffic Safety from 1995 - 1997. *Id.*

Since leaving the Durango police force, Mr. Watson has operated a natural food store that he owns. *See* Exhibit A to Motion, p. 13, ll. 23-4. Between 1997 and 2007, Mr. Watson also worked on approximately 20 - 25 cases involving traffic accident investigations. *Id.* at p. 14, ll. 10-15. This case is the second case that Mr. Watson has worked on since 2007. *Id.* at p. 15, ll. 8-9. Since leaving the Durango police force, Mr. Watson has not had any training in accident reconstruction or subscribed to any publications in the field of accident reconstruction. *Id.* at p. 16, ll. 15-21. Mr. Watson concedes that he is not an expert in analyzing cell phone records "other than [having] done a little bit of investigation." *Id.* at p. 86, ll. 9-14.

Based on his curriculum vitae and deposition testimony, there can be no doubt that Mr. Watson is not qualified by knowledge, skill experience, training, or education to render an expert opinion that Defendant was on his cell phone at the time of the subject accident based on an analysis of Defendant's cell phone records. Given Mr. Watson's absence from police investigatory work for the past 16 years and minimal involvement in cases involving traffic accidents for the past 6 years, I also question whether Mr. Watson is qualified by knowledge, skill experience, training, or education to render an expert opinion that Defendant did not stop at a stop sign just before the accident and was traveling at 40 mph at the moment of impact. However, because these opinions are within the realm of Mr. Watson's experience and training, I will further analyze the reliability and relevance of these opinions.

With respect to his opinion that Defendant's vehicle was traveling at a speed of 40 mph at the time of impact, Mr. Watson stated at his deposition that

> ... you have to look at the damage of the vehicles and the distance they have moved and the type of movement they have had and so forth and so on, and make an estimate of speed based on what you have seen and accidents where you know what the speeds were because you have witnesses, you have uncontested statements of drivers and everything, so you that this vehicle – that this accident was of the configuration of 25 miles an hour and that one was at 60 miles an hour. So, it is based on my experience of having viewed accidents of around 40 miles an hour and the extent of damage ....

*See* Exhibit A to Motion, p. 69, ll. 14-25. *See also* Exhibit B to Motion, p. 4 (citing experience investigating traffic collisions, training and working as an instructor in accident reconstruction, and nature and extent of damage to both vehicles as bases for his opinion that the speed of Defendant's vehicle was 40 mph at the moment of impact). When Defendant's counsel pressed him on the scientific basis for his opinion of the speed of Defendant's vehicle, Mr. Watson responded by acknowledging his familiarity with mathematical formulas used to calculate speed but proceeded to state that he did not know the necessary variables in this case and conceded that he did not reference any scientific analysis in his report. *See* Exhibit A to Motion, p. 70, l. 6 - 19; p. 71, ll. 12 - 17; p. 73, ll. 19 - p. 74, l. 11.

Under these circumstances, Plaintiff cannot meet his burden of demonstrating that Mr. Watson's estimate of the speed of Defendant's vehicle is reliable. Mr. Watson admitted that there is little science to support this opinion and that it is based in large part on his experience with other unidentified and undocumented accidents at known speeds. As set forth above, the majority of Mr. Watson's experience was obtained when he was working on the Durango police force 16 and more years ago. I therefore conclude that Mr. Watson's opinion regarding the speed of Defendant's vehicle is inadmissible both because he lacks the necessary qualifications to render this opinion and because it is not sufficiently reliable.

Apart from his inadmissible opinion regarding the speed of Defendant's vehicle, Mr. Watson's opinion that Defendant ran the stop sign is based on his assessment of Defendant's credibility on this issue and the fact that the investigating officer stated as much in his accident report. *See* Exhibit B to Motion, pp. 4 & 7. In light of Mr. Watson's reliance on these subjective considerations, Plaintiff cannot meet his burden of demonstrating that Mr. Watson's opinion that Defendant did not stop at the stop sign is reliable. *See also United States v. Adams,* 271 F.3d 1236, 1245 (10th Cir. 2001) (credibility of witnesses is generally not an appropriate subject of expert testimony because such testimony, among other things, encroaches upon jury function; exceeds the scope of expert's specialized knowledge; and unduly influences the jury). Once again then, I conclude that this opinion is inadmissible both because Mr. Watson lacks the necessary supporting qualifications and because it is not sufficiently reliable.

Finally, Mr. Watson's opinion that Defendant had adequate time to see Plaintiff's vehicle and react to avoid the accident is based on "typical drivers' habits." *See* Exhibit B to Motion, p. 5. Mr. Watson determined these habits via a test he conducted at the accident scene whereby he used a stopwatch to time 10 vehicles traveling the same path as Defendant's vehicle from the stop sign to the point of impact and 10 vehicles traveling the same path as Plaintiff's vehicle from the time they passed where a pile of dirt had been on the day of the accident to the point of impact. *See* Exhibit A to motion, p. 31, l. 15 - p. 33, l. 2. Mr. Watson conducted this test approximately 4 years after the subject accident at a different time of day and under different conditions since the intersection was not under construction as it had been on the date of the accident. *Id.* at p. 31, ll. 15-20 & p. 53, ll. 13- p. 54, l. 4. Mr. Watson contends that the selected vehicles exhibited "kind of traditional or standard driving practices and rates" and "appeared to

7

be driving in a standard and normal manner" and that he believes the sample size is reliable though he did nothing to determine that this is the case. *Id.* at p. 32, ll. 3-4; p. 32, l. 23 - p. 33, l. 1; & p. 96, l. 24 - p.97.

Based on the significant deficiencies in Plaintiff's methodology as a result of different circumstances and poorly defined parameters, Plaintiff cannot meet his burden of demonstrating that Mr. Watson's opinion that Defendant had adequate time to see Plaintiff's vehicle and react to avoid the accident is relevant let alone reliable. This opinion is therefore also inadmissible because Mr. Watson lacks the necessary supporting qualifications and because Plaintiff cannot demonstrate that this opinion is both reliable and relevant.

Apart from the specific opinions discussed above, there is no other basis for Mr. Watson's opinions that the subject accident was Defendant's fault or that Defendant was driving in a careless manner. *See* Exhibit B to Motion, p.7. Moreover, if Mr. Watson is not qualified to opine about the circumstances of the accident at issue in this case, then he is also not qualified to opine about the cause of this accident. Mr. Watson shall therefore be precluded from testifying at trial in this case.

**B.  Michael Miranda**

Like Mr. Watson, Mr. Miranda has opined that Defendant failed to stop at a stop sign; was on his cell phone at the time of the accident; and was traveling 40 - 45 mph at the moment of impact. *See* Exhibit D to Motion. Mr. Miranda has also opined that Plaintiff had the right-of-way at all times leading up to the accident . *See* Exhibit C to Motion, p. 49, ll. 19-24.

Mr. Miranda's background and credentials are somewhat unclear since Defendant failed to include Mr. Miranda's curriculum vitae as an exhibit and Plaintiff, as is commonly the case,

cites an exhibit that is neither attached to his response nor properly referenced as an attachment to another pleading. As best I can gather from the limited information before me though, Mr. Miranda was a state trooper until February of 2008 . *See* Exhibit C to Motion, p. 14, ll. 4-8. From 1999-2001, while a state trooper, Mr. Miranda acted as an accident reconstruction specialist before voluntarily resigning from that position. *Id.* at p. 14, ll. 7-19. Mr. Miranda received some training in accident reconstruction and claims to have some 33 years experience investigating traffic accidents. *Id.* at p. 15, ll. 10 - 21 & p. 29, l. 25 - p. 30, l.1.

Based on his background as supported by evidence and as alleged, there can be no doubt that Mr. Miranda is not qualified by knowledge, skill, experience, training, or education to render an expert opinion that Defendant was on his cell phone at the time of the accident based on an analysis of Defendant's cell phone records. Given Mr. Miranda's limited and dated experience in accident reconstruction and investigation, I also question whether Mr. Miranda is qualified by knowledge, skill, experience, training, or education to render an expert opinion that Defendant did not stop at a stop sign just before the accident; was traveling 40-45 mph at the moment of impact; and did not have the right-of-way. However, because these opinions are within the realm of Mr. Miranda's experience and training, I will further analyze the reliability of these opinions.

Mr. Miranda's opinion that Defendant's vehicle was traveling at a speed of 40 - 45 mph at the moment of impact is based on his experience "investigating traffic accidents, looking at damage on vehicles, actual speed calculations on other vehicles in comparison to the damage, just looking at the photographs of the vehicles...." *See* Exhibit C to Motion, p. 29, l. 23 - p. 30, l. 4. *See also* Exhibit D to Motion, p. 3 ("Based on training and experience the damage sustained

by [Defendant's vehicle] is consistent with an impact speed of 40-45 mph."). Mr. Miranda acknowledged that this opinion is subjective and that he had not identified or produced any speed calculations from other accidents to support his opinion. *See* Exhibit C to Motion, p. 30, ll. 7-19.

Since Mr. Miranda has failed to provide any objective evidence to support his opinion of the speed of Defendant's vehicle, Plaintiff cannot meet his burden of demonstrating that this opinion is reliable. In fact, Mr. Miranda himself states that "the lack of accurate measurements and information make this a difficult case to obtain accurate results." *See* Exhibit D to Motion, p. 3. Mr. Miranda's opinion regarding the speed of Defendant's vehicle is therefore inadmissible.

Mr. Miranda's opinion that Defendant ran a stop sign shortly before the accident is likewise inadmissible to the extent that this opinion is based on his opinion that Defendant was traveling at a speed of 40-45 mph at the moment of impact. The only other evidence that Mr. Miranda cites in support of this opinion consists of Defendant's statements, the accident report, and the fact that Defendant paid the traffic citation charging him with running the stop sign. Much of this evidence is inadmissible, *see* C.R.S. § 42-4-1713 ("... no record of the conviction of any person for any violation of [Article 4 of the Uniform Motor Vehicle Law] shall be admissible as evidence in any court in any civil action"), and any opinion based on it is only admissible if an expert in the field of accident reconstruction would reasonably rely on such evidence in reaching an opinion. Fed. R. Evid. 703. Plaintiff has failed to meet his burden of establishing that this is the case or that Mr. Miranda's assessment of Plaintiff's credibility render his opinion that Defendant did not stop at the stop sign reliable. *See Adams, supra.* This opinion

is therefore also inadmissible.

Finally, Mr. Miranda's opinion that Plaintiff had the right of way at all times appears to be based on C.R.S. §42-4-703(3) and the fact that an accident occurred. *See* Exhibit C to Motion, p. 49, l. 19 - p. 52, l. 21. According to Mr. Miranda, because an accident occurred, Plaintiff necessarily violated C.R.S. § 42-4-703(3) which provides that

> ...every driver of a vehicle approaching a stop sign shall stop .... After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or juncture of roadways.

To support this opinion, Mr. Miranda summarily states that even if Defendant initially stopped at the stop sign, Plaintiff's vehicle was in the intersection or approaching on another roadway so closely as to constitute an immediate hazard even though he admittedly does not know the speed of Plaintiff's vehicle. *Id.* at p. 50, ll. 12-20; Plaintiff's Exhibit 17, p.3. In any event, I am not persuaded that Mr. Miranda is qualified to interpret the statute on which he relies or that this opinion which is unsupported by any calculations or data is reliable. Mr. Miranda's opinion regarding right-of-way is therefore inadmissible.

Apart for the specific opinions discussed above, there is no other basis for Mr. Miranda's opinions that Defendant could have avoided the accident at issue in this case. Mr. Miranda shall therefore be precluded from testifying at trial in this case.

### III. Conclusion

IT IS THEREFORE ORDERED as follows:

1. Defendant's Motion to Strike or Limit the Testimony of Plaintiff's Experts, Jeff Watson and Michael Miranda, and to Preclude Undisclosed Rebuttal Opinions Pursuant to *Daubert* and Fed. R. Evid. 702 [ Doc # 105] is GRANTED; and

2. Neither Mr. Watson nor Mr. Miranda shall be permitted to testify at trial in this case.

Dated: November   19  , 2013 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE